IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 11-cv-01792-RPM

SHANNON BOURGEAULT, formerly known as SHANNON CHAPMAN,

Plaintiff,

v.

PUEBLO COUNTY, COLORADO, by and through THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF PUEBLO,

Defendant.

_____

**MEMORANDUM OPINION AND ORDER**
_____

This action arises from the Pueblo County Department of Social Services' decision to transfer Plaintiff Shannon Bourgeault from the Department's Adult Protection Services Unit to its Child Welfare Unit, and then ultimately fire her five months later. Defendants have moved for summary judgment. The following material facts are not genuinely disputed, and are construed in Plaintiff's favor.

Shannon Bourgeault initially worked as a caseworker in Pueblo's Adult Protective Services Unit ("APS"), and became Lead Caseworker in the Unit in 2004. In that capacity, Bourgeault managed cases herself, and also supervised a team of caseworkers.

Bourgeault's performance appraisal forms for 2005, 2006, 2007, and 2008 gave her an overall rating of "5=Employee consistently meets expectations" on a scale of "1=Employee frequently fails to meet expectations" to "9=Employee frequently exceeds expectations." In Bourgeault's 2007 appraisal, her supervisor at the time, Levetta Love, rated her a "3=Employee

occasionally fails to meet expectations" for "Administration," and stated:

> Shannon has struggled with the administrative responsibilities of her position during this evaluation period which has put the agency at risk of being in noncompliance with state rules. She must pay more attention to effective organization and time management. She has not established performance standards with her staff and held them accountable.

In 2008, Bouregault's "Administration" score improved to a "5=Employee consistently meets expectations," though Levetta Love noted that Bourgeault "must put structure in place to ensure that mandated directives not directly associated with keeping adults safe are also taken care of[,] such as case documentation, case file set up, court reports, [Colorado Benefits Management System ("CBMS")] requirements, and case plans."

From 2008 to 2009, Bourgeault was repeatedly warned that she was not meeting State and County standards for documenting and managing APS cases. Three surveys conducted by the Colorado Division of Aging and Adult Services during that time uncovered significant deficiencies in the cases assigned to Bourgeault. A survey from spring 2008 specifically noted that Bourgeault's files "were the least documented" of all the audited caseworkers, and a 2009 survey of seven cases assigned to Bourgeault found that each failed to meet basic program requirements. Bourgeault was considered particularly deficient in entering reports and data into the CBMS, which jeopardized Pueblo's funding from the State for its services, and in submitting court reports for guardianship cases in a timely manner.

Bourgeault was also warned that she was not properly supervising her subordinates. The spring 2008 State survey stated that Bourgeault's practice of allowing an assigned caseworker an additional three days to make first face-to-face client contact upon receiving a case violated "rule and policy," and that Bourgeault "[did] not routinely staff cases with her caseworkers, provide for case plan review, or complete a case file review upon closure of a case." The spring

2009 State survey revealed serious documentation problems with the files of each caseworker and was highly critical of Bourgeault, stating that she had "not provided adequate and accurate supervision and training."

The 2008 State surveys made specific recommendations to improve the Unit's performance, but as of April 2009, the State found that Bourgeault had "not implemented, maintained, and followed through" on them. On May 1, 2009, Bourgeault's supervisor Danielle Dunaway, who had replaced Levetta Love, formally reprimanded Bourgeault for her performance. On June 15, 2009, Dunaway provided Bourgeault the results of an internal audit, which found that Bourgeault had maintained no documentation whatsoever for 16 cases assigned to her to investigate for potential mistreatment, abuse or neglect. Dunaway gave Bourgeault until July 31, 2009 to complete the documentation in accordance with APS standards, but Bourgeault never did so.

In August 2009, Bourgeault took Family Medical Leave Act ("FMLA") leave. Additional performance issues then came to light. At the beginning of Bourgeault's leave, a support staffer checked her voicemail and discovered there were over 20 messages reflecting ongoing case issues, some of which were weeks old. APS staff also found written reports of neglect and abuse that were languishing, unaddressed, in Bourgeault's work area, and expressed concern to Dunaway that Bourgeault's return would negatively affect the Unit.

When Bourgeault returned from FMLA leave in October 2009, she was immediately transferred from the APS Unit to the Child Welfare Unit, where she was assigned to be a Foster Care Coordinator. The transfer decision was made by Danielle Dunaway together with Jose Mondragon, the Director of the Department of Social Services. Bourgeault did not perform a

supervisory function in her new position.

In February 2010, the Pueblo Board of County Commissioners held a public meeting presenting an employee furlough plan to address a budget shortfall. Bourgeault, a union member, attended the meeting along with other union members to protest the plan, and was featured in a photograph in a Pueblo Chieftain article describing the meeting as "a revolt of county workers." Following the meeting, Rapunzel Fuller, the Administrator of the Child Welfare Unit, told her: "Even though some people don't appreciate what others do in the Union to benefit everyone, I do." A follow-up town hall meeting on the furlough issue was scheduled for the first Saturday in March. The day before the meeting, Bourgeault mentioned that she was going to attend to Jose Mondragon, who responded: "You and Dorothy Butcher?" Dorothy Butcher is a long-time union activist in Pueblo.

As a Foster Care Coordinator, Bourgeault investigated the fitness of individuals to be foster parents. On March 11, 2010, Bourgeault informed her supervisor, Eleanor Gutierrez, that, during one such investigation, she discovered the criminal history of a current foster parent, and, based on that information, contacted the director of Nextep, a community alcohol treatment and supervision facility for criminal defendants, to further inquire about the foster parent's background. In the process, she revealed the foster parent's identity. Both Gutierrez and Rapunzel Fuller believed that Bourgeault's actions violated the duty of foster parent confidentiality imposed under Department rules and regulations.

The Department then held two pre-disciplinary meetings in late March 2010, one focused on Bourgeault's performance in the APS Unit, the other related to her purported breach of confidentiality in the Child Welfare Unit. As a result of the APS Unit meeting, Danielle

Dunaway recommended that Bourgeault be fired. Rapunzel Fuller recommended a suspension. Jose Mondragon reviewed their recommendations and ultimately decided to fire Bourgeault, effective April 6, 2010. Bourgeault appealed the decision, as she was entitled to do under the terms of her union's collective bargaining agreement with the County, and attended an appeal meeting with the Pueblo Board of County Commissioners on May 11, 2010. About a month later, the Board issued notice that it was sustaining Jose Mondragon's decision to fire Bourgeault. She was 51 years old at the time.

Bourgeault brought five claims for relief based on the foregoing events: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; (2) retaliation under the FMLA, 29 U.S.C. § 2601 et seq.; (3) violation of the First Amendment's freedom of association; (4) unfair labor practices under the Colorado Labor Peace Act, C.R.S. § 8-3-101 et seq.; and (5) wrongful termination and breach of contract under the Union Agreement between Pueblo County and Plaintiff's union.

To sustain her ADEA claim, Bourgeault must prove, by a preponderance of the evidence, that age was the "but for" cause of Pueblo County's decision to demote and fire her; this does not require her to show that her age was the sole motivating factor, but she must show that age was the factor that made the difference. See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1277 (10th Cir. 2010). Even when the evidence is viewed in the light most favorable to Bourgeault, no reasonable juror could find that Defendant's decision to transfer and ultimately fire her was because of her age. Bourgeault has not produced any evidence, direct or circumstantial, to support this claim.

As to Bourgeault's FMLA retaliation claim, assuming the Department's decision to

transfer her constituted an adverse action, Bourgeault must establish a causal connection between her FMLA leave and the transfer. See McWilliams v. Jefferson County, 463 F.3d 1113, 1117 (10th Cir. 2006). It is undisputed that the transfer occurred immediately after Bourgeault returned from FMLA leave, raising an inference of causation. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) ("A retaliatory motive may be inferred when an adverse action closely follows protected activity.") (citation omitted). The County has shown a legitimate business reason for the transfer--Bourgeault's historically unsatisfactory performance.

Bourgeault argues that pretext is demonstrated by the contrast between her annual performance appraisals, describing her as consistently meeting expectations, and the transfer for inadequate performance of duty. But the appraisals notified Bourgeault of her shortcomings in documenting cases and managing her subordinates, and those performance issues were well-documented elsewhere long before she took her leave. Cf. McWilliams, 463 F.3d at 1117 (no pretext because "the County's stated reason for Plaintiff's termination-her difficulty in getting along with coworkers-is documented beginning in 1997 (two years prior to Plaintiff's extended FMLA leaves)"). The evidence supports the Defendant's stated reason to transfer Bourgeault. There is no basis for a reasonable juror to find that the reason is unworthy of belief. Therefore, Bourgeault cannot show pretext and summary judgment is warranted on her FMLA retaliation claim.

Bourgeault claims that the Defendant violated her First Amendment freedom of association by firing her based on her union activities. She has not supported this claim by any evidence beyond her union membership, her attendance at the "protest meeting," and two stray,

union-related comments made by Fuller and Mondragon. Such evidence is insufficient to show that Bourgeault's union activities were a "substantial and motivating factor" behind the decision to fire her. See Maestas v. Segura, 416 F.3d 1182, 1187 (10th Cir. 2005) (describing free speech retaliation test). Nor has Bourgeault offered evidence of a municipal custom or policy that caused her injury. See Bd. of County Comm'rs v. Brown, 436 U.S. 658, 694 (1978). Accordingly, Bourgeault's freedom of association claim is dismissed.

Because jurisdiction for this civil action is based on the federal law claims that are now dismissed, and Plaintiff's state law claims for unfair labor practices, wrongful termination, and breach of contract are substantially different, the exercise of supplemental jurisdiction is denied under 28 U.S.C. § 1367(c)(3).

Upon the foregoing, it is

ORDERED that summary judgment is granted, dismissing Plaintiff's First, Second and Third Claims for Relief with prejudice, and that Plaintiff's Fourth and Fifth Claims for Relief are dismissed without prejudice for lack of jurisdiction.

Dated: June 7, 2013.

BY THE COURT:

s/ Richard P. Matsch

_____
Richard P. Matsch
Senior District Judge